IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **Adrienne Lyde**<br>Philadelphia, PA 19145<br><br>**Jessica Bowers**<br>Philadelphia, PA 19154<br><br>And<br><br>**Jennifer Albandoz**<br>Philadelphia, PA 19115<br><br>Plaintiffs,<br><br>v.<br><br>**CITY OF PHILADELPHIA**<br>1401 John F. Kennedy Boulevard<br>Philadelphia, PA 19102<br><br>Defendant. | CIVIL ACTION NO.<br><br><br><br><br>JURY TRIAL DEMANDED |

**COMPLAINT**

I.   **INTRODUCTION**

The qualified list of applicants for Warden of the Philadelphia Department of Prisons ("PDP") for the two-year period starting in February 2020 was comprised of four individuals: The three plaintiffs, Adrienne Lyde, Jessica Bowers, and Jennifer Albandoz, and a fourth woman who resigned in February 2021. Despite three Warden positions becoming available during the pendency of the list, and a fourth in May 2022, none of the qualified female applicants were offered the positions, or even interviewed. Refusing to hire for the critical Warden positions from an established list of qualified applicants is an historical anomaly and unsupported by any non-discriminatory reason as the Warden positions have been funded each year through the City

1

of Philadelphia Budget.  Further indicating its discriminatory intent, upon the expiration of the list in February 2022, the educational requirements and point structure for grading potential applicants for Warden were both changed to the benefit of male applicants, as described more fully below.  Plaintiffs bring this action against the City of Philadelphia ("Defendant") for discriminating against them plaintiffs based on their sex in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e, *et seq.* ("Title VII"), and the Pennsylvania Human Relations Act, as amended, 43 P.S. §951, *et seq.* ("PHRA") for failing to promote them to the position of Warden.

## II.    PARTIES

1. Plaintiff, Adrienne Lyde, is a female individual residing in the Commonwealth of Pennsylvania.  Plaintiff Lyde was hired by the City of Philadelphia on September 16, 1996, and has been employed by the PDP from December 8, 2000 through the present.  She is employed as a Human Services Program Administrator, has been promoted regularly, and has had Superior performance evaluations throughout her twenty-one year career in the PDP.  Most recently, on September 1, 2022, Ms. Lyde received a "Superior" rating on her yearly performance evaluation.

2. Plaintiff, Jessica Bowers, is a female individual residing in the Commonwealth of Pennsylvania.  Ms. Bowers was hired by the City of Philadelphia on July 28, 2003 and was employed by the City of Philadelphia in the PDP from July 28, 2003, until October 8, 2021.  During the eighteen years of her employment in the PDP, her job titles were Correctional Officer, Sergeant, Lieutenant, Captain, and finally, Deputy Warden at Curran-Fromhold Correctional Facility ("CFCF").  Ms. Bowers had Outstanding performance evaluations throughout her entire employment in the PDP.

3. Plaintiff, Jennifer Albandoz, is a female individual residing in the Commonwealth of Pennsylvania. Ms. Albandoz was hired by the City of Philadelphia on March 18, 1996, and has been employed by the City of Philadelphia in the PDP from that date through the present. She is employed as a Human Services Program Administrator, has been promoted regularly, and has had Outstanding performance evaluations throughout her twenty-six-year career in the PDP. Most recently, on September 2, 2022, Ms. Albandoz received a performance evaluation of "Outstanding".

4. Defendant, the City of Philadelphia, is a political subdivision of the Commonwealth of Pennsylvania, with its principal office located at 1401 John F. Kennedy Boulevard, Philadelphia, PA 19102.

5. At all times material hereto, Defendant employed more than fifteen (15) employees.

6. At all times material hereto, Defendant instituted, acquiesced in, ratified and/or made employment decisions based on sex.

7. At all times material hereto, Defendant acted by and through its authorized agents, servants, and/or employees acting within the course and scope of their employment with Defendant and in furtherance of Defendant's business.

8. At all times material hereto, Defendant acted as an employer within the meaning of the statutes which form the basis of this matter.

9. At all times material hereto, Plaintiffs were employees of Defendant within the meaning of the statutes which form the basis of this matter.

**III.     JURISDICTION AND VENUE**

10.     The District Court has jurisdiction over Plaintiffs' Title VII claim pursuant to 28 U.S.C. §1331.

11.     The District Court has supplemental jurisdiction over Plaintiffs' PHRA claim pursuant to 28 U.S.C. §1367.

12.     Venue is proper in the District Court under 28 U.S.C. §1391(b) and 42 U.S.C. §2000(e)-5(f).

13.     On March 15, 2022, Plaintiffs filed Complaints with the Pennsylvania Human Relations Commission ("PHRC"), complaining of discriminatory acts based on sex.  These Complaints were cross-filed with the U.S. Equal employment Opportunity Commission (EEOC").

14.     On April 7, 2022, and July 8, 2022, the PHRC and EEOC, respectively closed Plaintiffs' cases permitting them to move forward with this action under the PHRA and Title VII.

15.     Plaintiffs have fully complied with all administrative prerequisites for the commencement of this action.

**IV.     FACTUAL ALLEGATIONS**

16.     In February 2020, Plaintiffs Lyde, Bowers, and Albandoz took and passed the Civil Service Exam for the position of Warden.

17.     The only other individual qualified for the Warden position who also took and passed the Civil Service Exam was Rodica Craescu, also a woman.

18.     The results of the exam ranked the qualified Warden candidates as follows: Adrienne Lyde, Jessica Bowers, Rodica Craescu and Jennifer Albandoz.

19. The Plaintiffs were specifically told in the notice of their results from Defendant, "When we have sufficient vacancies to reach your rank on the eligible list, you will be contacted by a human resources representative to schedule an appointment for a job interview."

20. Under the "civil service rule of two" if there is a vacancy for a position, Defendant City of Philadelphia must interview the two interested candidates with the highest exam scores.

21. In July 2020, CFCF Warden John Delaney retired. Instead of promoting any of the other three qualified female applicants to fill the position, Nancy Giannetta, the Warden at Riverside Correctional Facility ("RCF") was transferred to become the Warden of CFCF, and Cathy Talmadge, the Warden of the Detention Center ("DC") was given the added responsibility of being the Warden of RCF.

22. The decision to merge the DC and RCF Warden positions disregarded both the PDP Budget and Organizational Chart, which both provide for four Warden positions.

23. Commissioner Blanche Carney and Deputy Commissioner Terence Clark attempted to justify the decision of consolidating the facilities under one Warden on the basis that due to a recent drop in the census (inmate population) of the Detention Center ("DC") they were closing that jail. However, the DC was not closed and inmates remain housed in that facility to this day; housing many inmates dealing with medical and mental health issues as well as quarantine housing during the pandemic.

24. Ms. Craescu resigned in or around February 2021, leaving the three Plaintiffs as the remaining persons on the active list of qualified applicants for Warden.

25. In August 2021, Warden Giannetta, Warden of CFCF, retired unexpectedly, leaving two open Warden positions.

26. None of the qualified female applicants were interviewed for the position.

27. The positions remain open.

28. It is customary for the PDP to interview and fill open positions from active lists for positions. Further, in the past twenty-five years, there has never been a single open Warden position that was not filled from the active list of qualified applicants.

29. As an example, four individuals from the Deputy Warden list, Steven Angelucci, Earicka Patterson, Edwin Cruz and Robert Rose, were promoted to open Deputy Warden positions within a year of taking the exam, on the same day as Plaintiffs in February 2020.

30. On September 9, 2021, Plaintiff Bowers asked Deputy Commissioner Xavier Beaufort why there had not been any promotions or even any interviews for three open Warden positions. Deputy Commissioner Beaufort responded, "It is not on the agenda. The Commissioner does not want to promote." This conversation occurred in Deputy Beaufort's office immediately before he conducted employee disciplinary hearings, which take place on Thursday mornings at 9 a.m.

31. On Friday, September 17, 2021, Plaintiff Bowers asked Deputy Commissioner Terrance Clark why they are just letting the list expire when there are three open Warden positions. Deputy Commissioner Clark responded, "Look who is on the list. Would you promote?"

32. On or about September 24, 2021, Warden Cathy Talmadge retired, leaving three open Warden positions.

33. Again, none of the qualified female applicants were interviewed for the position.

34. At that time there were three open Warden positions and three qualified candidates to fill those positions: Plaintiffs Lyde, Bowers and Albandoz.

35. Plaintiff Bowers resigned on October 8, 2021, as a direct result of not even being considered for the Warden positions she had worked so hard to achieve during her eighteen years of employment, coupled with the blatant disrespect by the Deputy Commissioners when she inquired as to why neither she nor her fellow female qualified candidates were not being considered for the three open Warden positions.

36. Defendant City of Philadelphia cancelled the exam for the Warden position previously scheduled for February 2022.

37. Defendant City of Philadelphia publicly posted on various job sites for internal candidates to apply for the open Warden positions before February 23, 2022, when the list Plaintiffs were on for the position expired.

38. Plaintiffs have not been provided with any explanation for why none of the qualified female applicants were hired or even interviewed for the open Warden positions.

39. The failure to interview Plaintiffs for the open positions at any time violated Defendant's policies and procedures; specifically, the "rule of two."

40. Further, Defendant's decision to cancel the February 2022 Warden Test was made to circumvent the "rule of two" as the decisionmakers were aware that the "rule of 2" would no longer be in effect starting at the beginning of the new fiscal year, e.g. July 2022.

41. In or around April 2022, the qualification requirements for the Warden position were revised to no longer require a bachelor's degree as previously had been the case.

42. Instead, the education requirement was lowered to require only:

   a. Completion of 60 college credits at an accredited college or university which has included major coursework in Criminal Justice, Public Administration, Business Administration, Behavioral Science, or a related field; or

  b. Completion of 30 college credits from an accredited college or university and certification from the American Correctional Association as a Certified Corrections Executive.

43. Additionally, correctional experience at the deputy warden level was added as a substitute for actual education credits under either of the education requirement options, on a year for year basis, such that for each year the applicant was a Deputy Warden, the applicant can use that year as a substitute for 30 college credits.

44. These changes to the Warden qualifications were made to permit potential male applicants, including but not limited to Deputy Wardens: Pierre Lacombe, Norman Williams, Robert Rose, and Steven Angelucci to become eligible for the Warden positions, for which they were previously unqualified.

45. None of these four male deputy wardens were qualified to be applicants for Warden under the rules in place during the time Plaintiffs were on the active list of qualified applicants for Warden, or during the period when the open Warden positions remained vacant between July 2020 and the time of the change in qualifications in or about April 2022.

46. Critically, male Deputy Wardens Pierre Lacombe, Norman Williams and William Vetter, were given oversight responsibilities at RCF, CFCF and PICC, respectively, while Plaintiffs were on the active Warden list, thereby providing the male Deputy Wardens with experience not afforded to Plaintiffs.

47. Further, postponing the previously scheduled Warden test gave more time for the newly promoted males, including Deputy Wardens Steven Angelucci and Robert Rose, to obtain experience that now permits them to qualify for the Warden position under the revised qualifications.

48. On May 13, 2022, Michele Farrell retired as Warden of the Philadelphia Industrial Correctional Facility ("PICC").

49. Plaintiffs Lyde and Albandoz were not interviewed for the position of Warden at PICC.

50. All of the Warden positions remain open.

51. Defendant City of Philadelphia has continued posting and otherwise attempting to hire for the open Warden positions continuing to the present day, via job positing on City of Philadelphia job page and internal emails to prison staff.

52. Plaintiffs Lyde and Albandoz have continued to make clear that they are interested in being considered for the Warden positions.

53. Specifically, they reapplied in July 2022.

54. Defendant removed the test from the application process to rank Plaintiffs worse in relation to male applicants.

55. As a direct result of the newly revised qualification requirements and removing the test from the process, the new list of qualified applicants consisted of five male applicants for the Warden positions, along with three female applicants, including Plaintiffs Lyde and Albandoz on.

56. Inexplicably, Plaintiffs Lyde and Albandoz were ranked last and second to last of the eight applicants.

57. The results were demonstrably biased against Plaintiffs Lyde and Albandoz. Specifically, the point system which replaced the exam benefits the male applicants by giving points in "experience" for Captain, Lieutenant, and Sergeant roles, all of which are precursors to

9

the Deputy Warden position, which is the title held by all five male applicants, four of whom were appointed to that position while the then existing Warden positions were kept unfilled.

58. There are currently no employees within the PDP that hold the position of Warden.

59. The approved PDP budgets for 2020 through 2023 had have line items for four Wardens.

60. As exemplified through the lawsuit of *Remick et al. v. City of Philadelphia*, 20-cv-1959, a class action lawsuit brought by incarcerated individuals in the PDP regarding their conditions of confinement, the lack of Wardens is detrimental to the expedient and efficient running of the Philadelphia Prisons. As exemplified in this case, without Wardens in place to effectively run Philadelphia correctional facilities there has been a lack of oversight. While Deputy Wardens may have had site responsibilities, they also had their own duties in addition to taking on the Warden's job responsibilities.

61. On March 31, 2022, Defendant hired John Wetzel, former Secretary of Corrections, as a consultant to provide additional oversight to the PDP at a significant cost, belying any claim that failure to promote Plaintiffs to the Warden position was due to budgetary concerns.

62. The current PDP leadership has displayed a pattern and practice of biased, selective, and discriminatory behavior against female administrative staff with regard to discipline and promotional matters, in addition to refusing to consider Plaintiffs for the open Warden positions. Examples include:

    a. Former Wardens Nancy Giannetta, Cathy Talmadge, and Michele Farrell were unfairly disciplined and passed over for promotion to Deputy Commissioner,

    resulting in the promotion of Deputy Warden Xavier Beaufort, who was the least senior Deputy Warden of the PDP at the time, and despite not meeting the educational requirement for the position of Deputy Commissioner at the time of his promotion. Although the position of Deputy Commissioner is an appointed position, no Deputy Warden had previously been appointed to the position of Deputy Commissioner.

b. Deputy Commissioner Terence Clark was the lowest ranking Warden when he received a provisional promotion, instead of more experienced and qualified female candidates, to the position of Deputy Commissioner, which position he held for several months and then was officially promoted to the position following the retirement of Deputy Commissioner Karen Bryant.

c. Warden Gerald May was similarly provisionally appointed to the position of Deputy Commissioner ahead of female Warden Michele Farrell who had more seniority.

d. Deputy Commissioner Karen Bryant was unfairly given a negative performance evaluation and disciplinary reports, which were successfully refuted and rescinded through Civil Service hearings, to appoint Deputy Commissioner Clark to her position.

e. Warden John Delaney was the Warden at CFCF for years while his wife worked in the same facility as HR Manager though when Nancy Giannetta became Warden her husband was transferred to the DC allegedly to avoid a conflict of interest.

   f. Deputy Commissioner Xavier Beaufort is permitted to supervise the immediate supervisor of his spouse.

### Count I – Title VII

63. Plaintiffs incorporate herein by reference the paragraphs above, as if set forth herein in their entirety.

64. By failing to promote Plaintiffs to the open Warden positions Defendant has violated Title VII.

65. Said violations were done with malice and/or reckless indifference.

66. As a direct and proximate result of Defendant's violations of Title VII, Plaintiffs have suffered the damages and losses set forth herein and has incurred attorneys' fees and costs.

67. Plaintiffs are now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendant's discriminatory acts.

### Count II – PHRA

68. Plaintiffs incorporate herein by reference the paragraphs above, as if set forth herein in their entirety.

69. By failing to promote Plaintiffs to the open Warden positions Defendant has violated the PHRA.

70. Said violations were done with malice and/or reckless indifference.

71. As a direct and proximate result of Defendant's violations of the PHRA, Plaintiffs have suffered the damages and losses set forth herein and has incurred attorneys' fees and costs.

72. Plaintiffs are now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendant's discriminatory acts.

**Request for Relief**

WHEREFORE, Plaintiffs respectfully request judgment against Defendant and the following specific relief as follows.

a) awarding compensatory damages to make the Plaintiffs whole for all lost earnings, earning capacity and benefits, past and future, which Plaintiffs have suffered or may suffer as a result of Defendant's unlawful conduct;

b) awarding compensatory damages to Plaintiffs for past and future pain and suffering, emotional upset, mental anguish, humiliation, and loss of life's pleasures, which Plaintiffs have suffered or may suffer as a result of Defendant's unlawful conduct;

c) awarding Plaintiffs the costs of suit, expert fees and other disbursements, and reasonable attorney's fees;

d) awarding Plaintiffs punitive damages for Defendant's intentional discrimination with malice or reckless indifference to Plaintiffs' protected rights;

e) Plaintiffs demand a jury trial as to each count and claim; and

f) Granting such other and further relief as this Court may deem just, proper, or equitable including other equitable and injunctive relief, providing restitution for past violations, and preventing future violations.

DATE: October 5, 2022

WEIR GREENBLATT PIERCE LLP

_____
Alan L. Yatvin, Esquire
Noah Cohen, Esquire
1339 Chestnut Street, Suite 500
Philadelphia, Pennsylvania 19107
Tel: 215-665-8181
*Attorney for Plaintiffs*