# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| Adrienne Lyde, et al. | : | C.A. NO. 2:22-cv-03965-MMB |
| Plaintiffs, | : | |
| v. | : | |
| City of Philadelphia | : | |
| Defendant. | : | |

## DEFENDANT'S PRETRIAL MEMORANDUM

Defendant, City of Philadelphia ("Defendant" or "City"), by and through its counsel, Clark Hill PLC, hereby submits its Pretrial Memorandum. The City reserves the right to supplement, amend, or modify this Pretrial Memorandum prior to trial.

### I.     NATURE OF THE ACTION AND BASIS FOR JURISDICTION

Plaintiffs, Adrienne Lyde and Jennifer Albandoz, have brought claims for gender discrimination against the City.[1] Specifically, Plaintiffs allege the following claims against the City:

**COUNT ONE**: Sex Discrimination under Title VII of the Civil Rights Act of 1964; and

**COUNT TWO**: Sex Discrimination under the Pennsylvania Human Relations Act

The basis for the Court's jurisdiction is federal question.

### II.     COUNTERSTATEMENT OF FACTS

Plaintiffs Albandoz and Lyde are currently employed as Human Services Program Administrators ("HSPAs") with the Philadelphia Department of Prisons (the "Department"). The Department primarily includes two divisions, the restorative and transitional services division ("RTS") and the security division. The RTS division is primarily responsible for the provision and management of social services for inmates, and includes, among many other positions, social

---

[1] Plaintiff Jessica Bowers discontinued her action against the City of Philadelphia on February 7, 2024.

1

workers and HSPAs. The security division primarily runs and manages the prison facilities, and includes, among many other positions, correctional officers and deputy wardens.

In February 2020, Plaintiffs took the Civil Service exam for a warden position with the Department and were subsequently placed on an eligible list for a potential warden position (the "2020 List").

During the height of the COVID-19 pandemic (the "pandemic"), multiple wardens retired from various Department prison facilities.

Given the challenges of the pandemic, the Commissioner for the Department, Blanche Carney, decided to grant oversight responsibility to the deputy wardens that were working at the Department's prison facilities, rather than promote any new wardens, including Plaintiffs.

In December 2022, after the worst of the pandemic, the Commissioner decided to fill the vacant warden positions. By that time, the 2020 List had expired. At the Department's direction, Central HR for the City created a new eligibility list for the warden position. As discussed below, Central HR, working with the Department, expanded the minimum requirements for the warden position to allow for a larger pool of prospective candidates.

To fill the open warden positions, the Commissioner, the Commissioner's Chief of Staff, and the Deputy Commissioners (the "Panel") held interviews with the eight prospective candidates included on the Central HR's updated eligibility list. The candidates included, among others, the Plaintiffs, along with the three deputy wardens that were given oversight responsibilities for the prison facilities, all of whom ranked higher than the Plaintiffs on the most recent Civil Service review process conducted in the Summer of 2022.

Ultimately, following the interview process, the Department decided to promote the three deputy wardens that were essentially running the prison facilities at the time and during the pandemic, all of whom were male (the "New Wardens").

Plaintiffs allege that the Department discriminated against the Plaintiffs, based on gender, when it decided not to promote the Plaintiffs to the vacant warden positions, along with its decision to revise the warden position requirements.

Plaintiffs' claims have no merit. As an initial matter, there is absolutely no direct evidence of gender discrimination. In fact, the evidence demonstrates that the Department's decision to change the warden requirements and decision to hire the New Wardens were all made for legitimate, rational, non-discriminatory business reasons.

The pandemic presented unique, incredible challenges for the Department. The Department's leadership is responsible for maintaining the health and safety of its employees as well as the incarcerated persons within their prison facilities. A warden is the CEO of a prison facility.

As the Commissioner testified at her deposition in this matter, it would have been reckless to promote the Plaintiffs to warden during the height of the pandemic, *i.e.,* the most difficult and demanding time to be a prison warden. In fact, Plaintiffs, <u>unlike the deputy wardens running the prison facilities</u>, had absolutely <u>no</u> experience managing and/or overseeing the prison facilities.

Plaintiffs tout their history of positive performance reviews as evidence of discriminatory intent; however, a heightened level of leadership is required for promotion to the warden position, especially during a global pandemic. As the Commissioner testified during her deposition, the Plaintiffs lacked the requisite level of leadership needed for promotion to warden.

Likewise, Central HR's and the Department's decision to expand the minimum qualifications for the warden position was made for legitimate, rational, non-discriminatory business reasons.

Specifically, the Department expanded the pool of warden candidates by no longer requiring a candidate to have a bachelor's or master's degree when such candidate possessed significant experience managing a prison facility.  It is certainly a legitimate, logical, and nondiscriminatory business decision to diversify pathways to leadership and to give seasoned, proven employees, regardless of gender, greater access to such positions. In fact, as Janine LaBletta of Central HR testified at her deposition in this matter, the purpose of expanding the minimum requirements for warden was to promote consistent requirements between experienced deputy wardens and the warden position. The deputy warden position is a "feeder position" for warden. However, prior to the change in minimum requirements, a deputy warden was not required to have a bachelor's or master's degree while the warden position required such degrees.  Accordingly, it is entirely logical and reasonable to expand the minimum qualifications for the warden position to allow a deputy warden with significant experience to become a warden, regardless of whether such deputy warden has a bachelor's or master's degree (*i.e.,* a candidate should not be required to have a bachelor's or master's degree to become warden if they have significant experience and a proven track record of managing a prison facility as a deputy warden).  This has been the trend for government agencies to increase and diversify the number of candidates for government positions.

Ultimately, following the interview process, the Department determined that the New Wardens were best qualified to be promoted to the vacant warden positions.

## CITY OF PHILADELPHIA'S WITNESSES

The City reserves the right to call the following individuals as witnesses at trial:

### Liability Witnesses

1. Commissioner Blanche Carney
2. Former Deputy Commissioner Terence Clark
3. Deputy Commissioner Xavier Beaufort
4. Chief of Staff Gregory Vrato
5. Human Resources Director Michael Zaccagni
6. Human Resources Deputy Director Janine LaBletta

### Damages Witnesses

1. Chad L. Staller, Esq.
2. Stephen M. Dripps

## III. TRIAL EXHIBITS

| Exhibit No. | Description |
| --- | --- |
| City 1 | Deposition Transcript of Commissioner Blanche Carney |
| City 2 | Deposition Transcript of Deputy Commissioner Terence Clark |
| City 3 | Deposition Transcript of Deputy Commissioner Xavier Beaufort |
| City 4 | Deposition Transcript of Chief of Staff Gregory Vrato |
| City 5 | Deposition Transcript of Michael Zaccagni |
| City 6 | Deposition Transcript of Janine LaBletta |
| City 7 | Interviewer Notes for December 2022 Warden Exam |
| City 8 | Correspondence Regarding Change to Warden Specifications |
| City 9 | Chad Staller's CV |

| | |
|---|---|
| **City 10** | Stephen Dripps' CV |
| **City 11** | Rebuttal Expert Report regarding Plaintiff Adrienne Lyde |
| **City 12** | Rebuttal Expert Report regarding Plaintiff Jessica Albandoz |

## IV.  SPECIFIC LEGAL ISSUES

The City intends to move to prohibit Plaintiffs from presenting any purported evidence from former Philadelphia Department of Prison wardens, Nancy Giannetta, Cathy Talmadge, and Michelle Farrell, that they were purportedly subject to gender discrimination. Any such purported evidence is not relevant and inadmissible under Federal Rule of Evidence 404. Rule 404(a) prohibits evidence of a person's character or character trait to prove that on a particular occasion the person acted in accordance with the character or trait. Rule 404(b) prohibits evidence of any other crime, wrong, or act to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.

Likewise, the City intends to move to prohibit Plaintiffs from presenting any purported evidence that "[d]epartment leadership, and specifically, Commissioner Carney, has a [purported] past practice of sex-based discrimination in her position of Commissioner." Any such purported evidence is likewise inadmissible under Federal Rule of Evidence 404 and not relevant to the claims at issue.

The City also intends to move to prohibit Plaintiffs from presenting any purported evidence relating to Warden Pierre LaCombe's criminal history, as well as any evidence that Warden LaCombe and former Deputy Commissioner Terence Clark allegedly submitted degrees from Almeda University, an unaccredited college. Any such purported evidence is likewise inadmissible under Federal Rule of Evidence 404 and not relevant to the claims at issue.

Moreover, the City also intends to move to prohibit Plaintiffs from presenting any purported evidence that the City purportedly discriminated against Jessica Bowers and/or that the City settled Jessica Bowers' claims against the City. Any such purported evidence is not relevant and inadmissible under Rules 404 and 408.

Finally, the City reserves its right to object to Plaintiffs' "Schedule of Exhibits" to the extent such Exhibits are inadmissible hearsay and/or otherwise inadmissible. At this time, the City does not know how Plaintiffs intend to use such Exhibits, and thus is unable to determine whether such Exhibits are admissible. On their face, the following Exhibits appear to be inadmissible hearsay: P-22, P-26, P-28, P-29, and P-32-33.

March 28, 2024

**CLARK HILL PLC**

*/s/ David Seidman*

H. David Seidman, Esq. (PA ID: 87769)
Two Commerce Center
2001 Market Street, Suite 2620
Philadelphia, PA 19103
phone: (215) 640-8515
Fax: (215) 640-8501

*Attorney for Defendant*
*City of Philadelphia*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of Defendant's Pretrial Memorandum was electronically filed with the Court this 28th day of March, 2024 and was electronically mailed to the following counsel of record:

Noah S. Cohen, Esq.
WEIR GREENBLATT PIERCE LLP
1339 Chestnut Street, Suite 500
Philadelphia, Pennsylvania 19107
Tel: 215-665-8181
Email: ncohen@wgpllp.com

        **CLARK HILL PLC**

        */s/ H. David Seidman*
        H. David Seidman, Esq.

        *Attorney for Defendant*
        *City of Philadelphia*